Thank you. Good morning, I'm Mark Schneider, and I'm representing Cora La Valle in the Social Security Appeal. In this case, the objective evidence showed that my client was disabled, that she was almost presumptively disabled under Listing 1.04 for her spinal disorders. She had radiculopathy, she had motor loss, sensory reflex loss, but she did not have the positive SLR straight leg raise in both the supine and seating position. But if you look at the findings and conclusions of the treating sources, including the radiological reports, she had an MRI that showed there was an impingement on her fecal sac, she had an EMG that showed there was a radiculopathy into her legs, she had positive straight leg raises. The ALJ erred by not giving controlling weight to these findings of the treating doctors and sources. But sir, though he made notice of them, did he not also note that Ms. La Valle was able largely to care for her daughter and that when the weather was appropriate, she could partake in three-mile hikes in her neighborhood? Yeah, that was a serious mischaracterization of the evidence, because if you credited her testimony, I was going to get to that later, but I'll get to it now, that when she testified, she credibly testified, she did all these things with limitations. It was not easy. She had to lie down six times a day. She had numbness in her hands and feet. She had pain. She was going to treatment. I'll get more to credibility, but the judge, that was not reliable. He cherry-picked a few little factoids that he found, but that was not enough to discredit her if you accepted what she said. She had... Was there a particular aspect of the residual functional capacity analysis that you think was incorrect, or were you challenging more the conclusion that she could perform any work? Well, no. The functional capacity was wrong. The judge did not consider her cognitive impairments. He didn't consider that she had limits in attention and concentration. He did not consider her non-exertional limitation of pain. He did not consider the side effects of her medications, and, in fact... He gave inadequate weight to those factors. He wrote a fairly detailed report. He did not... He gave an accurate RFC to the VE, where she would be off-task 20% of the time, and then he didn't credit his own accurate RFC, but if you look at her limitations as documented by the treating sources, as well as by her own testimony, she could not do sedentary work. If you look at the three jobs that they found she could do, an ampule sealer, a table worker on a conveyor belt, a bench hand with clock and watches, there's no way that, if you look at her real RFC, she could not do those jobs. But wasn't the testimony also that she was on the computer and on Facebook and played solitaire for extended periods of time? That is not enough. There are many cases out of this court. The fact that you're not totally an invalid does not mean that you can work, and she said she did it for a few minutes at a time. She's testified credibly. She had to lie down a lot throughout the day. She could clean for a few minutes and then would have to lie down. Her treating primary care provider, Nurse McClure, who was out of Dr. Racine's office, said she could not do any work because of her back pain and obesity. She was more than morbidly obese. She was super morbidly obese. Champlain Spine, the pain doctors that she went to. Does she have any obligation to take a more aggressive approach towards her obesity? Maybe health-wise, but not legally. She would only have to have done that if the judge found she was disabled by the obesity. But the cases also show, everybody, I like to lose weight too, and many people do. And she was unable to do that. And that does not mean that she was not disabled by her morbid obesity. Dr. Wassef, the examining doctor, consulting doctor for the commissioner, he agreed that she had pain in her back and in her legs. But I thought he was simply recounting what she had said. No, no, no, he examined her. And that is clinical evidence. He was not just looking at her history. He did an exam. And a doctor can tell if somebody's faking or not. And he found that she had this pain when he did the range of motion test. And the judge, equally important in this case, is credibility, where the ALJ wrotely held that he considered all the evidence and she was not entirely credible for the reasons explained. And he never gave a valid explanation why she was not credible. He should have enhanced her credibility because she had a lot of treatment. He should have enhanced her credibility because she had a good work history. He found her not credible because she had applied and received unemployment. And the cases make it clear. And the policies make it clear. That is one factor. But you can't rely only on that. I know, but the standard is substantial evidence. And you see that there's some, you know, that does constitute some evidence and you're relying heavily on the testimony of a nurse practitioner as a treating source, which she really isn't. Perhaps a nurse practitioner should be. They usually spend 10 times as much time with a client, with a patient, as a doctor does. But under the regs, that doesn't work for you. No, but you cannot use as your primary factor that somebody received unemployment when in New York State, that's what people do. People do not get short-term disabilities. You've just transmuted that into being a primary factor. You conceded it's a factor. When you get this factor and that factor and the other factor together, you may get... You look at her credibility... I'm sorry. Go ahead. I'm sorry. If you look at her credibility, I think she was very credible. She was never inconsistent internally or inherently. And this judge seemed to make that the primary factor that she had received unemployment when she had no other money. And the cases and the policies say that could be one factor in assessing credibility. But you look at the EMG and MRI and straight leg rays, those are objective findings. And once you have those objective findings, the person...and they can support her pain, she testified credibly. He also held it against her that she only stood twice in the hearing when she said she was uncomfortable and he finally let her stand. And that, again, is not substantial evidence by itself. He also found that not losing weight was held against her and that clearly is not a factor in discrediting somebody. OK, you vote. I think you've reserved the final vote. And three minutes rebuttal. We'll hear you then, Mr Shirey. Thank you. Thank you, Your Honours. This is an appeal from the District Court... Do you adjust the microphone? Oh, sure. This appeal from the District Court in a decision dated May 2016 affirming the Commissioner's decision should be upheld. The Commissioner's decision is supported by substantial evidence, including the Commissioner's determination of the RFC, credibility assessment, his assessment of her combination of impairments. It didn't seem to me that the ALJ really engaged on any opinions given by Dr Racine. There was much discussion in this record about Nurse McClure, but I don't think he actually... There was at least an opinion by Dr Racine, even if it was short-term, that she was disabled. Could you explain why he didn't? Sure, Your Honour. I believe there was... You're correct. There was a... Well, there was a conclusory statement by Dr Racine I believe it was... Some might call that a medical opinion, but OK. We argue that it's an issue... It's a statement on an issue reserved to the Commissioner. But you're correct. There was a statement that she could not return to... She was totally disabled and there was a temporary time period where she could not return to work. I believe that was dated September of 2012. However, if you look at the record, that particular slip or out-of-work slip that Dr Racine signed, it primarily related to chest pain that she was having at the time. And further on in the medical records, it will indicate that her chest pain had resolved. So you're correct, there was that conclusory statement by Dr Racine, but it was not something permanent or long-term, that she could not work and it did not contain any functional limitations. Am I correct that Nurse McClure worked in Dr Racine's office or worked with him? You're correct, Your Honor. I guess my concern is if the ALJ was going to, as the regulations permitted him to do, discount the statements of Nurse McClure, it would have made sense to have found more information perhaps from Dr Racine who might have had additional information eliminative of the issues in this case. But I don't think he did that. No, Your Honor. If you're asking did he request a medical opinion from Dr Racine or something on that, no. And the regulations would not have required the ALJ to have done that because the absence of a medical assessment in the record, if you have all the medical records from that treating source, does not in itself make the medical evidence incomplete from that treating source. And there were records from her treating sources, contrary to what my colleague has argued in this case, that indicated that functionally she was not as limited as she claimed to be. And the RFC, which was, as I may point out, significantly limited. She was limited to a range of sedentary, less than a range of sedentary work. She could sit for two hours, I mean stand and walk for two hours, excuse me, sit for six hours, but she had to change positions. Is the support that she could sit for six hours in an eight-hour day? Other parts of the record seem to suggest that she needed to get up and down. Correct, Your Honor. And that is why the ALJ made an additional restriction to her sitting ability in that she would have to get up every 30 minutes for one to two minutes to relieve any pain she might have been feeling. To what extent is it appropriate for a finder of fact to determine that one can sit for prolonged periods of time because one respects the proceeding by staying seated at the table during the hearing? Well, Your Honor, I think the length of the hearing actually does kind of support the ALJ's determination that she could. How long was the hearing? The hearing was for over an hour, and also there is evidence in the record that she herself admitted she could sit for 30 minutes. She also admitted, and contrary to what my colleague . . . She stood up in the course of that hour? I believe two brief periods, but she admitted. I mean, she herself acknowledged . . . The hearing was only one hour, and she stood up twice in order to relieve stress. What basis was there for finding that she can sit for prolonged periods of time just based on what happened in the hearing? Kirby, if you . . . I mean, I believe, Your Honor, though, that the ALJ did not focus entirely on that. That was one thing he looked at. But he also looked at all the medical records. He looked at the clinical findings, which did not support a finding that she was limited to that extent or more limited in her sitting ability than what the ALJ found. On most examinations, she had full strength in both her lower and upper extremities. She had full sensation. Her straight leg raising was negative on many of the examinations, if not most. She had deep tendon reflexes were present. So, I mean, that was just one element that the ALJ considered in creating or crafting his RFC. And the ALJ also . . . So the ALJ gave some weight to Nurse McClure's January 2014 assessment. He also gave great weight to the consultative examiners, Dr. Wassef and Dr. Hardman. Again, their examination findings were benign and supported his RFC. Did the applicant have any obligation to try to lose weight in order to be deemed disabled by her obesity and associated functioning challenges? I agree with my colleague. Legally, that's not a factor. But the ALJ did not find her disabled because she did not lose weight. The ALJ found her not disabled because, despite her obesity, she could still function and perform work activity. It was based on his analysis of the RFC, the residual capacity that she had to do some work. Correct, Your Honor, which was supported by substantial evidence. But my impression is that the ALJ did consider that she did not lose weight and therefore did not follow the advice of her physicians. I think, Your Honor, in the context of assessing her credibility, he looked at all the treatment measures that were recommended for her. You know, she had aqua therapy. She had physical therapy. She discontinued going to physical therapy. Chiropractic therapy was recommended. She didn't want to go to that. Even after, you know, she had injections into her lumbosacral and thoracic spine, she declined, which provided significant relief, 100%, 75% relief, and then she declined to have any further injections. She wanted to do massage or acupuncture. So, I mean, it appears that whatever treatment recommendations there were, she either did not want to follow through, or if they were effective, you know, she declined to continue. And just to touch on with respect to her credibility, I do want to point out that the ALJ did apply the regulatory and statutory factors in assessing her credibility. He looked at the diagnostic findings. He looked at the clinical findings. He also looked at her activities of daily living, which contrary to what my colleague has stated, they were fairly active, and I think you've pointed out she herself admitted that she walked in the summer for three miles daily. She took care of children. She was able to shop. She was able to do cleaning, laundry, cooking six times a week. Also, we have, if you look at surgery was never recommended as a treatment option for her, and according to her physicians, if she did lose weight, her back pain, this would be an effective measure for her back pain to be eliminated or to decrease. In any event, the commissioner, and I'd also want to address the fact that my colleague has emphasized that her receipt of unemployment benefits was not a primary factor, was not the factor in assessing her credibility. If you look at the entirety of the ALJ's decision, as I have stated, he went through the regulatory and statutory factors. He applied them. And it's even not clear to what extent the ALJ found her receipt of unemployment benefits a factor in discrediting her. He acknowledged that. He acknowledged that she had a work history for eight years as a home health aide, that there was some discrepancy how long she received unemployment benefits in the record, but this was not the singular factor that he applied in assessing her credibility. In summary, I would just say that the commissioner correctly found the appellant not disabled from her alleged onset date of November 8, 2011, through May 22, 2014, the date of the ALJ's decision. This decision was based on substantial evidence. It was based in accordance with the Social Security Act and the commissioner's rulings and regulations. The district court's March 10, 2016, affirming the commissioner's decision, should be upheld. Thank you, Your Honor. Mr. Scheider. Her doctors found her credible in reporting her pain based upon the objective test. And they treated her. They tried injections. They tried PT. They tried hodrocodone. Your adversary says that the injections were quite effective. They were good for a short period of time. They did not work for a long period of time. What's a short period? I mean, they usually are good for three months, and they were good for a week or two is my recollection. She tried PT. She tried things that didn't work. The ALJ, one of his major errors is he never balanced the different pro and con issues on her credibility. He never, no reasonable person, no reasonable fact finder could look at her testimony and look at the EMG and MRI and straight leg rays and say that she was exaggerating her disabilities and her limitations. Her pain was admitted, documented by everybody. The ALJ also erred. There certainly was an acknowledgment of limitations. I mean, if all you're down to is being an ampule sealer, you're certainly, you know, quite limited. Her pain is a non-exertional limitation, the fact that she had to lie down throughout the day, the fact that she could only sit or stand for 15 minutes at a time. You have to look at the why have objective tests. Those tests showed they substantiated what she testified to. The tests don't show pain, right? They don't measure pain. They show range of movement and so on. No, no. Some tests, like the MRI and the EMG, show nerve impingements that could cause pain, and once you meet that standard, then the judge would have to explain why she was inconsistent or not credible, and all these little factoids together. What they do is corroborate a claim of pain, but they don't demonstrate the pain. Obviously, obviously, and nobody knows. Nobody can tell what pain is like to me or to you. It is a subjective thing, but these tests do substantiate somebody's assertions of pain. We don't know how much weight. The ALJ didn't find that she didn't have pain. The ALJ found that, on balance, whatever issues she had were not such to render her disabled. If you credited her testimony, which you should, no reasonable fact finder, there is not enough there. There was no explanation of why she was not telling the truth. The unemployment factor is not enough to justify it. The fact that she stood twice is not enough. The fact that she didn't lose weight. He didn't have any other inconsistencies. He didn't weigh those different factors. Isn't the ALJ supposed to put everything together? And explain why a person is not credible, and in this case, there was not substantial evidence. You're reasonable people, and obviously, you're going to make your decision, and you're fact finders, but based on the law of credibility, there is not enough here to discredit her, especially when you have these objective tests. The standard is, when you have that, there's a high burden on the judge to discredit somebody. Thank you. Thank you. Thank you both. We'll reserve decision.